## BROWN *v.* McINTIRE.

TRUSTS AND TRUSTEES; FRAUD; LACHES.

Where a trustee in a deed of trust pretending to the grantors, whose
agent for renting he also was, that he had foreclosed the trust
and sold the property for default in the payment of interest,
although he had collected rents more than sufficient to pay the
accrued interest, conveyed the same to a fictitious grantee, in
whose name he subsequently caused a deed to be made to his
sister for his own benefit, his purpose being to defraud the grant-
ors, it was *held* applying the rule laid down in Pryor *v.* McIntire,
*ante*, p. 417, that although nine years elapsed between the com-
mission of the fraud and its discovery, the grantors were entitled
to relief.

No. 466.   Submitted December 4, 1895.   Decided January 6, 1896.

HEARING on an appeal by the complainants from a decree
dismissing a bill for an accounting, and to set aside an
alleged fraudulent conveyance of real estate.   *Reversed.*

The COURT in its opinion stated the case as follows :

This is the second in a series of cases that were argued
and submitted together with No. 465—*Mary C. Pryor* v.
*Edwin A. McIntire* and *Martha McIntire, ante*, p. 417.

The original bill was filed February 7, 1891, by com-
plainant, as the sole child and heir at law of Barbara Brown,
who died, intestate, February 21, 1883.   The defendants to
the original bill were Edwin A. McIntire, Emma Taylor and
Richard Brouner.   No service was had upon the last two
and they are no longer parties to the case, for reasons here-
after made apparent.

On the same day that Edwin A. McIntire answered the
bill, April 7, 1891, two deeds were filed for record.   One,
dated April 25, 1881, was a deed from Emma Taylor and
Barbara Brown to Martha McIntire, while the other, dated
September 6, 1884, was a deed from Emma Taylor to Martha

McIntire.    Both deeds purported to convey lot 36 in L. Simmermacher's subdivision of original lot 5 in square 1002, city of Washington, known as 1216 I street, N. E., which is the lot in controversy.    Martha McIntire was then made a party defendant by an amended bill.

The bill alleges that said Barbara Brown executed a deed of trust on June 8, 1880, whereby she conveyed the premises to Edwin A. McIntire in trust to secure a note for $500, payable to the order of Richard Brouner.    That said McIntire pretended to sell the premises in April, 1881, under said trust deed, and made a conveyance thereof to a fictitious person called Emma Taylor.    That said pretended sale and conveyance and the subsequent conveyances were made and procured by said Edwin A. McIntire for the purpose of defrauding the said Barbara Brown, who died in ignorance of the fraud perpetrated upon her.    The bill prays that the said deeds be declared null and void, and that an account be taken of the amount that may be due upon the said note to Richard Brouner for the benefit of the owner thereof, and also of the rents and profits of said property received by the defendants.    There is a prayer also for the execution of a release of said trust and for general relief.

The answers denied the allegations of fraud, and charged regularity and good faith in the sale and conveyances thereunder, as well as knowledge, assent and ratification by deed of Barbara Brown.

The bill was dismissed, along with No. 465, *Pryor* v. *McIntire*, for the reasons therein given, and complainant has appealed.

It appears that Barbara Brown was seized in fee of the premises on June 8, 1880.    On that day she borrowed $400, through Edwin A. McIntire, and executed a note therefor, payable two years after date, to the order of Richard Brouner, with interest at 10 per cent. per annum, payable quarterly.    She also conveyed the premises to Edwin A. McIntire in trust to secure said note.    The trust deed contained the usual provision for sale in case of default in the payment of instalments of interest.

It is claimed by defendants that the money was furnished by Martha McIntire, but that the note was taken in the name of Brouner, an employee of the office, in accordance with a custom of McIntire and some other brokers, and assigned by him, "without recourse," to Martha McIntire. It is claimed that Barbara Brown did not pay the interest as stipulated, and that Martha McIntire demanded a sale by the trustee. He says that he advertised the same as required in a newspaper and made the sale at auction on the premises ; that Emma Taylor bought the property for $400, and a deed was made to her April 1, 1881.

Defendants claim that Emma Taylor assigned her bid to Martha McIntire, and a deed is produced purporting to have been executed by Barbara Brown and Emma Taylor, jointly, to Martha McIntire, on April 25, 1881, upon a consideration of $100. Another deed has been produced which bears date September 6, 1884, wherein Emma Taylor purports to convey the same property, along with some others, to Martha McIntire upon a recited consideration of $1,800. These deeds were not filed for record until April 7, 1891, the day upon which defendant, Edwin A. McIntire, filed his answer.

*Mr. Franklin H. Mackey, Mr. H. O. Claughton* and *Mr. Wm. W. Boarman* for the appellant.

*Mr. Enoch Totten* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

We are satisfied, as announced in *Pryor* v. *McIntire,* that there was no such person in existence as the " Emma Taylor " to whom Edwin A. McIntire pretended to convey the premises in controversy on April 1, 1881.

We are satisfied also that no public sale of the premises was had as claimed by Edwin A. McIntire under said trust. He and one of his sisters testify that the sale did take place, and that " Emma Taylor " was present and pur-

chased the property.  No other witness is produced who saw or heard of said sale.  No one of the occupants of adjoining houses saw or heard of the sale.  The occupants of the house itself say that no sale was made on the premises. Complainant, who was a child of about thirteen years at the time, had never heard of the sale.  Testimony of this character is not of much weight, and, taken by itself, would hardly justify the conclusion that no form of public sale had been gone through with on the premises.  Our conclusion is arrived at, however, without regard to it, save as a slight circumstance of corroboration.

Having found that there was no such person as "Emma Taylor," we can give no credence to the testimony of Edwin A. McIntire and his sister Emma T. McIntire, who say that they attended the sale and saw "Emma Taylor" there.  Although the trust deed required notice of sale to be given, and Edwin A. McIntire says it was published in a newspaper, a diligent search of the files of the papers of that day disclosed no such publication.  Edwin A. McIntire said that the sale was made by an auctioneer, J. T. Coldwell, since deceased, and produced a receipted account of his, showing an item of $16.50 charged as of April 15, 1881, for the sale of this property.  This is a genuine bill, in the handwriting of Coldwell, for one sale made February 19, 1881, describing the lot and naming the purchaser and price paid.  Between this item and the signature at the bottom several others have been entered, beginning with this sale and ending September 29, 1882.  These merely show the number of lot and square without naming purchaser or price paid.  Some of the other items refer also to sales, the occurrence of which are denied in some of the remaining suits of the series before referred to.  The scale of prices charged varies from that of the first item, although that conforms to the customary and established rate at the time.  The charge in the first item is $16.50 for a sale at $525, while the same amount is charged for this sale, which realized only $400.

It is plain from the expert testimony and the appearance of this receipt itself, that these later items were not written by Coldwell. Again it was proved that Coldwell kept a book in which it was his custom to paste the advertisements of sales made by him and to enter memoranda of the sales actually made. This book was found in the possession of his widow and contains entries, both before and after April, 1881, and yet nothing is found therein referring to this alleged sale.

It appears from the testimony, also, that, for some time before this alleged sale, McIntire was collecting rent from tenants of the premises at the rate of $8 per month. The interest on the note was $10 per quarter. He, however, gives no satisfactory explanation of what became of these rents, which were more than enough to pay the interest as it accrued due. When asked to produce his books showing collections of rent on this and on property in controversy in the other cases, he stated that they were destroyed by fire. This fire originated in the waste basket of his office and burned some of the books and papers in his desk, including the rent receipt books of that period. The fire was confined to his office and seems not to have been generally known. No receipt for this rent by Barbara Brown has been produced or accounted for.

We come now to consider the alleged deed made by Barbara Brown and Emma Taylor, jointly, conveying this property to Martha McIntire, April 25, 1881. The signatures to this deed purport to have been witnessed by Floyd Harlston, William Helmick and Samuel A. Peugh, and the acknowledgment was taken on April 28, by said William Helmick, justice of the peace.

It is apparent that the printed form of this deed was first filled out for Barbara Brown only, as grantor, and that the name Emma Taylor was afterwards added. The name of the grantee, first written, has been erased, and that of Martha McIntire written instead. Edwin A. McIntire says that the erased name was that of David McIntire, a brother,

since deceased, who expected to take the property and re-
imburse Martha McIntire, but failed to do so. From other
circumstances in the case, it is probable that it was origi-
nally intended to make " Emma Taylor" the grantee in
this deed, the effect of which would be to cut off the grantor
Barbara Brown from any inquiry into the alleged sale of
April 1, 1881. The grant is made subject to a deed of
trust, in whose favor does not appear, and throughout the
deed the pronoun representing the grantee is feminine,
which would not have been the case had the grantee first
written been David McIntire.

Floyd Harlston, the first witness to this deed, said, as a
witness in the Pryor case, that he was employed in the of-
fice of Edwin A. McIntire from 1879 to 1884, and during
that time had no recollection of having met " Emma Tay-
lor ;" that this deed had been shown him by McIntire a
few days before he testified, and that while he did not re-
member the occurrence, he was satisfied that his signature
was genuine. Samuel A. Peugh, when first called as a wit-
ness, denied that his signature attesting said deed was gen-
uine, but at a subsequent date, when called by defendants,
said that he had come to a different conclusion. William
Helmick is dead. His signature to the acknowledgment of
the deed is admitted to be genuine. There is some difference
in appearance between the signature of William Helmick to
the attesting clause of this deed and that to the certificate
of acknowledgment made three days later. There is no
apparent reason why, if he witnessed the deed on the 25th,
he did not then take the acknowledgment also. Two ex-
perts of established reputation, after examining and com-
paring this signature with others of Helmick, admitted to
be genuine, pronounced it a forgery.

The signatures of Barbara Brown and Emma Taylor,
though purporting to have been signed at the same time,
appear in different ink.

As regards the signature of " Emma Taylor " to this
deed, as well as the certification of William Helmick to her

appearance before him, we refer to the conclusion thereon stated in the opinion in the case of *Pryor* v. *McIntire.* Though there is some difference between this signature and some other " Emma Taylor " signatures exhibited in evidence, the evidence tends to show that it was actually written by Emma T. McIntire.

There is no testimony as to the genuineness of the signature of Barbara Brown. Samnel A. Peugh had been her attorney and her trustee. He could not testify as to her signature, nor did he remember the transaction, though. when called by defendants, he said that he believed his signature to be genuine, as well as that of Helmick also, with which he said he was familiar.

Concerning the " Emma Taylor " deed of September 6, 1884, nothing need be added to what has been said in *Pryor* v. *McIntire,* upon a consideration of the evidence in all of the cases.

Barbara Brown was evidently a woman of little education or business qualifications. She was then ill of consumption, of which she died, February 21, 1883. The complainant was then about thirteen years of age, and had no knowledge or information concerning any of these transactions.

We think it sufficiently clear that Barbara Brown died in ignorance of the fraud that had been perpetrated in the pretended sale of the property and its conveyance to the so-called " Emma Taylor."

The deed of April 21, 1881, in which she is made to appear as joining the fictitious Emma Taylor in the conveyance to Martha McIntire, whether signed by her or not, cannot, under the circumstances, be treated as a valid and effectual release of her equity of redemption. If she made that deed at all it was evidently under the impression that her equity had been foreclosed by the pretended sale of April 1, and conveyed by the deed then made to the said " Emma Taylor."

For the reasons given in our opinion in *Pryor* v. *McIn-*

*tire,* the delay in the institution of the suit has not been sufficient to bar complainant of her remedy.

The decree appealed from will therefore be reversed, with costs to the appellant, and the case remanded, with direction to take an account of the money due on the note made to Richard Brouner and assigned to Martha McIntire, with simple interest thereon, together with the taxes actually paid on the premises, if any, by the said Martha McIntire ; and also of the rents and profits of said premises that may have been collected by Edwin A. McIntire, and the reasonable value of the same since the possession of Martha McIntire began.

Upon the settlement of that account a final decree will be passed vacating and annulling the original trust deed and the deeds to Emma Taylor and Martha McIntire, and awarding, either to complainant, or defendant Martha McIntire, whatever balance may be found due. In the event that the balance shall be found in favor of Martha McIntire, the same shall be declared a lien upon the premises. All costs shall be taxed against the defendants. It is so ordered.

*Reversed.*

On January 10, 1896, a motion was filed by *Mr. Mackey* on behalf of the appellant to amend the decree of this Court.

On January 14, 1896, Mr. Justice SHEPARD delivered the opinion of the Court :

The appellant moves to amend the decree reversing this cause, so as to include in the account ordered to be taken a note for $600, and a trust deed to secure the same upon the premises, made October 8, 1880, by Samuel A. Peugh, trustee, and Barbara Brown to Edwin A. McIntire, trustee.

This note was referred to in the evidence, and the trust deed was read and incorporated in the record ; but as they

were not embraced in the allegations of either bill or answer, we did not deem it proper to include them in the account ordered. Whether there is anything due on that note, and the validity of the lien on the premises, are questions that should have been included in the controversy and settled in one general decree. Consequently, as counsel for appellee, though declining to agree to the amendment of the decree, has said that he thinks this note should be taken into the account, we will amend the decree as prayed in the motion, and further, to the extent that complainant be first required to amend her bill so as, by appropriate allegations, to bring the said note and trust deed into the controversy and within the prayers for relief. And it is so ordered.